UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


| | | |
|---|---|---|
| PEARL PHILLIP DORST, | ) | CASE NO. 3:15CV1687 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | GEORGE J. LIMBERT |
| | ) | |
| CAROLYN W. COLVIN[1], | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | MEMORANDUM OPINION |
| SECURITY ADMINISTRATION, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |


Plaintiff Pearl Phillip Dorst ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his application for supplemental security income ("SSI").  ECF Dkt. #1.  In his brief on the merits, filed on November 25, 2015, Plaintiff claims that the administrative law judge ("ALJ") erred because: (1) the residual functional capacity ("RFC") determination was not supported by substantial evidence; (2) the credibility determination was not supported by substantial evidence; and (3) the step five determination was not supported by substantial evidence.  ECF Dkt. #13.  Defendant filed a response brief on February 10, 2016.  ECF Dkt. #16.  Plaintiff did not file a brief in reply.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

**I.      FACTUAL AND PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on April 24, 2012 alleging disability beginning February 26, 2012.  ECF Dkt. #12 ("Tr.") at 23.[2]  Plaintiff's claim was denied initially and upon

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled.  This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

reconsideration.  *Id.*  Plaintiff then requested a hearing before an ALJ.  *Id.*  A hearing was held on March 14, 2014, during which Plaintiff testified.  *Id.*

On April 11, 2014, the ALJ denied Plaintiff's application for SSI.  Tr. at 20.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 24, 2012, the date of Plaintiff's application for SSI.  *Id.* at 25.  Continuing, the ALJ determined that Plaintiff had the following severe impairments: seizure disorder with left sided tremors; edema; major depressive disorder; social phobia; and impulse control disorder.  *Id.*  Next, that ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*

After considering the record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that Plaintiff was limited to: occasional climbing of ramps or stairs; never climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, and crouching; frequent crawling; frequent handling and fingering with the left upper extremity; avoiding all exposure to unprotected heights and the use of hazardous or heavy machinery; no commercial driving; simple, routine, and repetitive tasks; being permitted to be off task for up to five percent of the workday; working in a low-stress job (defined as occasional decision-making and occasional changes in the work setting); goal based production (work measured by the end result, not pace work); and occasional interaction with co-workers, supervisors, and the public.  Tr. at 27.  Continuing, the ALJ found that Plaintiff was unable to perform any past relevant work.  *Id.* at 31.  The ALJ then indicated that Plaintiff was an individual closely approaching old age at the time his application was filed, had a high school education and was able to communicate in English, and that the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled.  *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform.  *Id.*  Concluding, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, since April 24, 2012, the date the application was filed.  *Id.* at 32.

Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which was denied on June 17, 2015.  Tr. at 5.  At issue is the decision of the ALJ dated April 11, 2014, which stands as the final decision.  *Id.* at 20.  On August 21, 2015, Plaintiff filed the instant suit seeking review of the ALJ's decision.  ECF Dkt. #1.  In his brief on the merits, filed on November 25, 2015, Plaintiff claims that the ALJ erred because: (1) the residual functional capacity ("RFC") determination was not supported by substantial evidence; (2) the credibility determination was not supported by substantial evidence; and (3) the step five determination was not supported by substantial evidence.  ECF Dkt. #13.  Defendant filed a response brief on February 10, 2016.  ECF Dkt. #16.  Plaintiff did not file a brief in reply.

## II.  **RELEVANT PORTIONS OF THE ALJ'S DECISION**

After finding that Plaintiff had not engaged in substantial gainful activity since the date of his application and that he had severe impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. at 25.  When making this determination, the ALJ first indicated that Plaintiff's seizure disorder did not meet Listing 11.02 (epilepsy - convulsive epilepsy) or Listing 11.03 (epilepsy - nonconvulsive epilepsy) due to the seizure frequency imposed by both Listings.  *Id.*  Next, the ALJ stated that he considered the relevant listings before finding that Plaintiff's edema did not meet or medically equal a listing.  *Id.*

The ALJ then indicated that Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of Listing 12.04 (affective disorders), Listing 12.06 (anxiety-related disorders), or Listing 12.08 (personality disorders).  Tr. at 25. Continuing the ALJ stated that he considered whether the "paragraph B" criteria of these listings were satisfied.  *Id.*  Before providing his findings on the paragraph B criteria, the ALJ explained that to satisfy the paragraph B criteria, a claimant's mental impairments must result in at least two of the following:  marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation.  *Id.* at 25-26.

-3-

In activities of daily living, the ALJ found that Plaintiff had moderate restriction, noting that he was independent in his activities of daily living, and stating that Plaintiff: resided with family members and performed household chores such as cleaning, laundry, and caring for pets; reported that he read and did crossword puzzles in his spare time; and socialized with friends, grocery shopped, and attended church services. Tr. at 26.  The ALJ determined that Plaintiff had moderate difficulties in social functioning because, despite alleging that he did not like to be around other people due to irritable moods, Plaintiff: resided with his brother-in-law, sister-in-law, and their son with no apparent difficulty; had friends with whom he socialized; and was able to grocery shop and attend church services several times a week without any difficulty.  *Id.*  Additionally, the ALJ stated that Albert Virgil, Ph.D., J.D., an independent consultative examiner and psychologist, noted that Plaintiff appeared cooperative and should have been able to deal adequately with co-workers in a non-public setting.  *Id.*  With regard to concentration, persistence, or pace, the ALJ found that Plaintiff had moderate difficulties.  *Id.*  The ALJ stated that Plaintiff alleged difficulty concentrating, however, Dr. Virgil evaluated Plaintiff's cognitive functioning and found that he presented as alert and oriented with average intelligence, intact memory, sufficient attention, and logical and coherent thought content.  *Id.*  Further, the ALJ noted that Plaintiff could read for extended periods and did crossword puzzles "with difficulty and concentration, persistence, or pace."[3]  *Id.*  The ALJ stated that Plaintiff had not experienced any episodes of decompensation that were of extended duration. *Id.* Continuing, the ALJ determined that Plaintiff did not meet the criteria of "paragraph C' because he was totally independent in his activities of daily living, with respect to Listing 12.04(C), and there was no evidence demonstrating that Plaintiff's condition caused marked restrictions or resulted in a complete inability to function independently outside the area of his home, with respect to Listing 12.06(C).  *Id.* at 26-27.

The ALJ then discussed Plaintiff's RFC and the reasons for finding that Plaintiff could perform light work with additional limitations, as described above.  Tr. at 27.  Continuing, the ALJ stated that Plaintiff alleged that he was disabled due to non-epileptic seizures he had every couple

---

[3]The ALJ appears to be referring to the requirements to complete the crosswords, rather than Plaintiff's state while doing the crosswords.  *See* Tr. at 26.

-4-

of months that lasted up to four minutes and precluded his ability to work for at least a day until he recovered. *Id.* at 28. According to the ALJ, Plaintiff further maintained that his anti-seizure medication caused adverse side effects that included nausea and hallucinations, so he ceased taking the medication. *Id.* The ALJ also noted that Plaintiff maintained that he had hand tremors and dropped things, and that he had difficulty being around other people because of anger and irritable moods. *Id.*

Next, the ALJ stated that, after careful consideration of the evidence, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. Tr. at 28. It was the position of the ALJ that an analysis of the objective medical evidence demonstrated that Plaintiff was capable of light work activity with environmental, postural, and manipulative limitations consistent with the RFC finding. *Id.* The ALJ then stated that Plaintiff's allegations of debilitating seizures and tremors were inconsistent with: medical treatment notes demonstrating that Plaintiff's seizures were controlled with medication; non-compliance with recommended treatment; physical examination findings; and Plaintiff's activities of daily living. *Id.*

The ALJ then discussed the medical evidence, first stating that medical treatment notes demonstrated that Plaintiff's seizures were generally controlled with medication despite his subsequent non-compliance with his anti-seizure medication regimen. Tr. at 28. Continuing, the ALJ stated that Plaintiff was admitted to the hospital on February 24, 2012 after he reported seizure-like activity, however, an electroencephalogram ("EEG") performed on February 27, 2012 was essentially normal. *Id.* The ALJ indicated that Plaintiff was diagnosed with seizures and began an anti-seizure medication regimen, and follow-up treatment notes showed that his seizures were well controlled with medication. *Id.* According to the ALJ, Plaintiff's treating physician, Mark Arredondo, M.D., later noted that his seizures included left-arm tremors, added Tegretol to Plaintiff's medication regimen, and later indicated on April 10, 2012 that Plaintiff had been seizure free for some months. *Id.* Continuing, the ALJ stated that on April 24, 2012, Dr. Arredondo found that Plaintiff was doing well without seizures and continued his medication regimen. *Id.* The ALJ

noted that, on July 17, 2012, Dr. Arredondo stated that Plaintiff's Dilantin level was low and that, despite Plaintiff's non-compliance, Plaintiff maintained that the number of left-arm seizures had decreased by half.  Tr. at 28.

The ALJ then stated that Plaintiff visited a neurologist on September 6, 2012 and reported ten seizures from July 2012 to September 2012, however, there was no indication whether Plaintiff was taking his medication and Plaintiff's Dilantin levels were not tested.  *Id.*  Continuing, the ALJ noted that Plaintiff was hospitalized from October 29, 2012 to November 1, 2012 for seizures, but a video EEG test found no evidence of any seizure activity and Plaintiff's seizure episodes were found to be non-epileptic.  *Id.*  According to the ALJ, Plaintiff had a psychiatric consult during his hospital stay, and it was noted that his seizure episodes increased after his wife passed away and could be related to stress.  *Id.*

The ALJ next looked to February 28, 2013 medical treatment notes indicating that Plaintiff had not taken his anti-seizure medications since September 2012, and stated that these notes strongly suggest that Plaintiff's symptoms may not have been as serious as alleged.  Tr. at 28-29.  According to the ALJ, despite Plaintiff's non-compliance, Dr. Arredondo found that Plaintiff was stable with respect to his seizures.  *Id.* at 29.  The ALJ also stated that there was no indication that Plaintiff reported any adverse side effects from his anti-seizure medication and specifically denied hallucinations at his February 28, 2013 appointment with Dr. Arredondo.  *Id.*  Additionally, the ALJ noted that Plaintiff had not received any medical treatment for seizures since October 2012.  *Id.*

Regarding Plaintiff's edema, the ALJ indicated that Plaintiff was found to have lower extremity edema during his October 2012 hospitalization, however, a bilateral lower extremity venous duplex scan performed on October 30, 2012 was normal with no evidence of acute deep vein thrombosis of the lower extremities.  Tr. at 29.  Continuing, the ALJ stated that Dr. Arredondo examined Plaintiff on February 28, 2013 and found no focal neurological deficits and no indication of edema or difficulty with ambulation.  *Id.*  The ALJ stated that, regardless of these findings, the RFC limited Plaintiff to light work activity, which more than accounted for his edema.  *Id.*

Next, the ALJ determined that Plaintiff was mentally capable of simple, routine, and repetitive tasks in a low-stress work environment with occasional interaction with others consistent

with the RFC capacity finding. Tr. at 29. According to the ALJ, Plaintiff's allegations of concentration and social functioning deficits were contradicted by mental status findings, a recent history of mental health treatment with non-compliance, and his activities of daily living. *Id.* Continuing, the ALJ stated that despite alleging anger and difficulty being around other people, Dr. Virgil found that Plaintiff presented as polite and cooperative with normal speech, a only mildly depressed mood, and mild anxiety. *Id.* The ALJ noted that Dr. Virgil found that Plaintiff presented as clear and oriented with average intelligence, intact memory, sufficient attention, and logical and consistent thought content, which was inconsistent with allegations of difficulty with concentration. *Id.* With respect to treatment, the ALJ indicated that Plaintiff was diagnosed and treated for depression by Dr. Arredondo until he more recently began treatment with Young Rhee, M.D., in April 2013. *Id.* The ALJ then stated that Dr. Arredondo repeatedly found that Plaintiff's mood and affect were normal, and Dr. Rhee noted that Plaintiff has been inconsistent in attending scheduled appointments and non-compliant with taking his prescribed medication, which suggested that Plaintiff's mental symptoms may not have been as serious as had been alleged. *Id.*

Regarding Plaintiff's activities of daily living, the ALJ found that the activities belie his allegations of debilitating seizures and deficits in social functioning and concentration. Tr. at 29. To support this finding, the ALJ stated that despite allegations of frequent seizures, Plaintiff was able to: perform regular household chores such as cleaning, laundry, and preparing meals, and also worked around the house and care for pets. *Id.* Likewise, according to the ALJ, in spite of Plaintiff's alleged social functioning deficits, he had friends and socialized with them, and attended church. *Id.* Additionally, the ALJ stated that Plaintiff read and did crossword puzzles despite his alleged concentration deficits. *Id.*

As for the opinion evidence, the ALJ stated that he gave great weight to the opinion of the state agency medical and psychological consultants who opined that Plaintiff was capable of light work with environmental, postural, and manipulative limitations, and further indicated that these opinions were well supported by medical treatment notes. Tr. at 29. Continuing, the ALJ stated that the state agency psychological consultants opined that Plaintiff was capable of simple and occasional three to four step instructions in a low-stress work setting with limited interaction with others. *Id.*

at 30. The ALJ next stated that he gave great weight to the opinion of Dr. Virgil, who opined that Plaintiff: was capable of understanding and carrying out instructions with adequate attention and concentration; was able to respond to work pressures in an uncrowded work setting; and should have been able to interact adequately with co-workers in an uncrowded setting. *Id.* Continuing, the ALJ indicated that Dr. Virgil's opinion was well supported by his thorough evaluation findings, Plaintiff's non-compliance with mental health treatment and medications, and Plaintiff's activities of daily living. *Id.*

The ALJ indicated that he gave little weight to the opinion of Dr. Rhee, who opined that Plaintiff had marked to extreme limitations in social functioning and carrying out detailed instructions. Tr. at 30. Additionally, the ALJ stated that Dr. Rhee's opinion was inconsistent with Dr. Virgil's thorough evaluation findings and Plaintiff's high functioning activities of daily living, which included socializing with friends. *Id.* Continuing, the ALJ noted that Dr. Rhee apparently relied quite heavily on Plaintiff's subjective report of symptoms and limitations, and seemed to uncritically accept as true most, if not all, of what Plaintiff reported. *Id.* Additionally, the ALJ stated that he gave little weight to the global assessment of functioning ("GAF") findings, indicating that GAF scores do not describe specific work related limitations or objective mental abnormalities and stating that the Commissioner has stated that GAF scores do "not have a direct correlation to the severity requirements in our mental disorder listing." *Id.* Concluding the RFC discussion, the ALJ indicated that he gave little weight to the third-party seizure questionnaire submitted by Leilani Beery as it was inconsistent with the objective medical evidence, Plaintiff's non-compliance in taking his anti-seizure medication, and Plaintiff's activities of daily living. *Id.* at 31.

After completing his RFC assessment, the ALJ found that Plaintiff was unable to perform any past relevant work, was an individual closely approaching advanced age at the time the application was filed, had a high school education and could communicate in English, and that the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. Tr. at 31. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* Concluding, the ALJ

found that Plaintiff had not been under a disability, as defined in the Social Security Act, since April 24, 2012, the date the application was filed.  *Id.* at 32.

### III.   STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits.  These steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see  20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.   STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

-9-

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007).  Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found the plaintiff disabled.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Cole, supra* (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (internal citations omitted)).

**V.**      **LAW AND ANALYSIS**

   **A.**      **RFC Finding**

Plaintiff first asserts that the ALJ's RFC finding was not supported by substantial evidence and that the ALJ erred by not affording controlling weight to the opinion Plaintiff's treating psychologist.  ECF Dkt. #13.  In support of this position, Plaintiff claims that the ALJ failed to properly weigh the opinion evidence. *Id.* at 9-13.  Plaintiff asserts that the ALJ afforded little weight to the opinion of his treating psychiatrist, Dr. Rhee, instead finding that Dr. Rhee's opinion was inconsistent with Dr, Virgil's "thorough evaluation findings and [Plaintiff's] activities of daily living, which includes socializing with friends" and that "Dr. Rhee apparently relied quite heavily on the subjective report of symptoms and limitations provided by Plaintiff, and seemed to uncritically accept as true most, if not all, of what Plaintiff reported."  *Id.* at 11.  Continuing, Plaintiff states that the ALJ afforded great weight to the opinion of the non-examining state agency psychological consultants and Dr. Virgil, who examined Plaintiff a single time. *Id.*  Plaintiff asserts that Dr. Rhee saw Plaintiff no less than sixteen times between April 2013 and December 2013, and diagnosed depressive disorder (not otherwise specified), impulse control disorder, and personality

-10-

disorder (not otherwise specified), and also indicated a need to rule out attention deficit disorder. *Id.* Based on Dr. Rhee's history of treating Plaintiff, the ALJ avers that Dr. Rhee was in a position to provide a detailed longitudinal picture of Plaintiff's impairments. *Id.* at 11. As such, Plaintiff asserts that the ALJ erred in failing to afford controlling weight to the opinion of Plaintiff's treating psychiatrist and the RFC is thereby not supported by substantial evidence. *Id.* at 11-12.

Next, Plaintiff asserts that the ALJ failed to fully and fairly develop the record. ECF Dkt. #13 at 12. Plaintiff states that the ALJ afforded great weight to non-examining state agency medical consultants who opined that Plaintiff was capable of light work with environmental, postural, and manipulative limitations, and that the ALJ indicated that these opinions were well supported by: medical treatment notes demonstrating that Plaintiff's seizures were controlled with medication, the fact that Plaintiff was non-compliant with recommended treatment; physical examination findings; and Plaintiff's activities of daily living. *Id.* Continuing, Plaintiff states that Dr. Arredondo twice increased Plaintiff's medication for his seizure episodes and Plaintiff's neurologist, Marietta J. Medel, M.D., noted that Plaintiff had five or six seizure episodes despite his anti-epileptic regime. *Id.* Plaintiff avers that the ALJ erred by choosing to afford greater weight to non-examining sources rather than contacting either of these treating sources for opinions or consultative examinations. *Id.*

Defendant contends that substantial evidence supports the ALJ's findings as to Plaintiff's physical and mental limitations. ECF Dkt. #16 at 11-19. First, Defendant states that the diagnostic evidence consistently showed that Plaintiff did not suffer from debilitating seizures. *Id.* at 11. Defendant cites to a February 2012 MRI, a September 2012 EEG, and an October 2012 EEG, all making essentially normal findings, with the two EEGs explicitly showing no sign seizure activity. *Id.* Additionally, Defendant cites to numerous treatment notes showing that Plaintiff had a normal neurological system, was otherwise normal upon examination, and had no adverse side effects when taking his anti-seizure medication as prescribed but was nonetheless non-compliant in taking the medication. *Id.* (citing Tr. at 24-25, 195, 246, 249-52, 268, 278, 281, 322-23). Additionally, Defendant asserts that Plaintiff himself reported a significant decrease in seizure-like activity even when he was non-compliant with his anti-seizure medication regimen. *Id.* at 12.

-11-

Defendant also claims that, beyond the clinical findings, the ALJ also considered the only medical opinion evidence on Plaintiff's physical functioning and gave great weight to the opinions of state agency reviewing physicians Anton Freihofner, M.D., and Diane Manos, M.D.  ECF Dkt. #16 at 12.  Continuing, Defendant discussed Dr. Freihofner's opinion and Dr. Manos' opinion, indicating that Dr. Freihofner's opinion supported a finding that Plaintiff was capable of performing within the parameters of the ALJ's more restrictive RFC assessment and that Dr. Manos' opinion also strongly supported the ALJ's RFC assessment.  *Id.* at 12-13.  Defendant avers that Plaintiff's suggestion that the AlJ erred in giving great weight fails for the following reasons: (1) Plaintiff presents no conflicting medical opinion to undermine the supportability of the state agency reviewers' opinions; and (2) even if a conflicting opinion existed, the ALJ's decision to afford Dr. Freihofner's opinion and Dr. Manos' opinion great weight was especially appropriate here since the ALJ found their opinions "well supported by the medical treatment notes demonstrating that [Plaintiff's] seizures were controlled with medication, non-compliance [with] recommended treatment, physical examination findings, and [his] activities of daily living." *Id.* at 14 (quoting Tr. at 28-29).  Defendant then asserts that, to the extent Plaintiff identifies evidentiary inconsistencies, the ALJ was entitled to form his own conclusions about the weight of the evidence, and the ALJ's decision made clear that he considered the evidence Plaintiff points to and explicitly cited to or discussed much of that evidence.  *Id.* at 14-15.

Next, Defendant states that the only aspect of the ALJ's mental RFC findings that Plaintiff takes issue with is the ALJ's interpretation of Dr. Rhee's opinion, specifically that "the ALJ erred in failing to afford controlling weight to the opinion of Plaintiff's treating psychiatrist."  ECF Dkt. #16 at 15.  However, according to Defendant, the ALJ properly discounted Dr. Rhee's opinion and cited substantial evidence in support of his findings.  *Id.*  Defendant asserts that Dr. Rhee opined that Plaintiff had marked to extreme limitations in social functioning and carrying out detailed instructions, and noted that Plaintiff easily became frustrated, had a history of anger, and was impulsive.  *Id.* at 16-17.  Continuing, Defendant states that the ALJ gave little weight to Dr. Rhee's opinion with good reason, observing how Dr. Rhee "apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff], and seemed to uncritically accept as true,

-12-

most, if not all, of what [Plaintiff] reported." *Id.* at 17 (quoting Tr. at 30). Further, Defendant states that the ALJ properly discounted Dr. Rhee's opinion on this basis alone because a medical opinion must reflect a treating source's judgment, not just a Plaintiff's subjective complaints. *Id.* Defendant also indicates that the ALJ discussed the multiple inconsistencies that Dr. Rhee's opinion presented, which Defendant claims was more good reason to discount the opinion. *Id.* As for example to support this assertion, Defendant noted that despite the fact that it was Dr. Rhee's opinion that Plaintiff had extreme social limitations, the ALJ cited evidence that showed that Plaintiff was much more socially functional and lived with his family, attended cookouts with friends, regularly attended church several times a week, and was able to go grocery shopping. *Id.* Relatedly, according to Defendant, Dr. Rhee opined that Plaintiff had extreme limitations in carrying out detailed instructions, which the ALJ found inconsistent with evidence that showed that Plaintiff did household chores, such as cleaning and doing laundry, cared for pets, and could independently shop for groceries. *Id.* On these bases, Defendant asserts that the ALJ adequately articulated many good reasons for discounting Dr. Rhee's opinion. *Id.* at 18.

As for Plaintiff's non-compliance with his medication regime, Defendant contends that despite Plaintiff's assertion that he did not take his Viibryd (an anti-depressant) due to the alleged negative side effects caused by the anti-seizure and anti-depression medications, Dr. Rhee's treatment notes indicate that Plaintiff was non-compliant without even trying Viibryd until July 2013 despite receiving the medication with instructions to begin taking it in April 2013. ECF Dkt. #16 at 19. Defendant asserts that Plaintiff could not reasonably anticipate adverse side effects before even trying the prescribed medication. Additionally, according to Defendant, regardless of Plaintiff's purpose for not wanting to take his medications, the ALJ commented on Plaintiff's non-compliance generally and Dr. Rhee's notes also documented Plaintiff's failure to attend scheduled appointments. *Id.* For these reasons, Defendant avers that Plaintiff has failed to show the ALJ's consideration of his non-compliance was erroneous or harmful. *Id.*

As for Plaintiff's argument that the ALJ failed to develop the record, Defendant claims that it was Plaintiff's burden to prove that he was disabled and develop the record to that extent. ECF

-13-

Dkt. 16 at 13.  Defendant notes that Plaintiff had counsel present at the hearing, and, as such, the ALJ was not required to help Plaintiff further develop the record.  *Id.*

Defendant is correct in asserting that the ALJ cited substantial evidence in support of his RFC finding.  Plaintiff claims that the opinion of treating physician, Dr. Rhee, should have been accepted instead of the opinion of the examining physician, Dr. Virgil. ECF Dkt. #13 at 11.  An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  Social Security Rule ("SSR") 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*

Here, the ALJ complied with the treating physician rule by discussing a large amount of medical evidence demonstrating that the opinion of Plaintiff's treating psychologist was not well-supported by  medically acceptable clinical and diagnostic techniques, and that the opinion was inconsistent with other substantial evidence in the record.  The ALJ provided a detailed history of Plaintiff's treatment regarding his physical and mental limitations.  Tr. at 28-29.  During a discussion of the medical evidence, the ALJ cited numerous portions of the record demonstrating that Plaintiff's seizures were not so severe to warrant an RFC imposing greater limitations than those imposed by the ALJ, as well as repeated findings that Plaintiff's neurological system was largely normal.  *See* ECF Dkt. #16 at 11 (internal citations omitted).  Plaintiff fails to address the large amount of evidence conflicting with the opinion of Dr. Rhee, instead stating that Plaintiff met with Dr. Rhee no less than sixteen times between April 2013 and December 2013 and thus Dr. Rhee was in the best position to offer an opinion, and that during one of these meetings Plaintiff expressed reluctance to try an anti-depressant due to potential side effects.  ECF Dkt. #13 at 11.  The fact that Plaintiff met with Dr. Rhee sixteen times in approximately eight months certainly establishes that Dr. Rhee was Plaintiff's treating psychologist - a point over which there is no disagreement between the parties.  However, establishing a treating relationship between a plaintiff and a psychologist does

-14-

not automatically assume that the opinion of that treating psychologist is afforded controlling weight.  The opinion is afforded controlling weight only when supported by substantial evidence. Here, the medical evidence strongly suggests that Plaintiff was not as limited as opined by Dr. Rhee. Plaintiff's assertion that he once showed reluctance to try a new medication does not explain away his documented history of non-compliance, let alone the large amount of medical evidence showing relatively normal neurological findings.

The ALJ found that the opinion of Plaintiff's treating physician was not supported by medically acceptable clinical and diagnostic techniques and was inconsistent with other substantial evidence in the record.  *See  Wilson*, 378 F.3d at 544; SSR 96-2p.  Accordingly, the ALJ discounted the treating physician's opinion after providing good reasons for doing so.  As such, the ALJ complied with the treating physician rule and properly weighed the opinion evidence.

Additionally, Plaintiff's argument that the ALJ erred by failing to fully and fairly develop the record is without merit.  In his argument, Plaintiff asserts that the ALJ should have contacted Dr. Arredondo and Dr. Medel for treating source opinions or consultative examinations, but instead chose to afford greater weight to non-examining sources.  ECF Dkt. #13 at 12-13.  Plaintiff is wrong in suggesting that the ALJ had a duty to seek out Plaintiff's physician's for opinions or examinations.  20 C.F.R. § 416.912 explicitly states:

> In general, you have to prove to us that you are blind or disabled.  This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s).  If material to the determination whether you are disabled, medical and other evidence must be furnished about the effects of your impairment(s) on your ability to work.[4]

In addition, Plaintiff was represented by counsel at the hearing, and thus the ALJ had no special, heightened duty to develop the record.  *See Trandafir v. Comm'r of Soc. Sec.*, 58 F.Appx. 113, 115 (6th Cir. 2013).  Accordingly, Plaintiff has failed to show that the ALJ erred by not seeking out additional opinions and consultations from Plaintiff's previous physicians.

### B.        Credibility

---

[4]20 C.F.R. § 416.912 addresses potential claimants as "you."

Plaintiff next asserts that the ALJ's credibility determination was not supported by substantial evidence because Dr. Arredondo twice increased Plaintiff's Tegretol prescription for Plaintiff's seizure episodes, Dr. Medel noted that Plaintiff had five or six seizure episodes despite his anti-epileptic regimen, and Dr. Rhee noted that Plaintiff was reluctant to try Viibryd for his depression due to side effects. ECF Dkt. #13 at 14.  Additionally, Plaintiff states that Dr. Arredondo noted that Plaintiff had previously been hospitalized for a reaction to Tegretol and that Plaintiff was not taking his medication at the time of the hearing because he had not been able to see a doctor because he was unsure if his insurance would cover the expense. *Id.*  Plaintiff also claims that his condition increased the likelihood that he would not maintain compliance with his recommended medical regime. *Id.* at 15.  As for his activities of daily living, Plaintiff asserts that he has anger problems, panic issues, and does not "do well with criticism," as well as indicating that his medication made him angry instead of elevating his mood, as intended. *Id.*  Plaintiff maintains that his mere participation in daily activities does not preclude a finding of disability or an ability to engage in substantial gainful activity. *Id.*

Defendant contends that the ALJ correctly found that Plaintiff was not entirely credible based on inconsistencies in his testimony. ECF Dkt. 16 at 20.  Specifically, Defendant states that the ALJ found Plaintiff's allegations of disabling seizures inconsistent with treatment notes showing that Plaintiff's seizures could be controlled with medication without adverse side effects and that Plaintiff reported a significant decrease in seizure-like activity even when he was non-compliant with his anti-seizure medication regimen. *Id.*  Further, Defendant asserts that the ALJ found Plaintiff's allegations of disabling symptoms inconsistent with the physical examination findings, which were consistently normal. *Id.*  Defendant also states that the ALJ observed that, despite allegations of frequent seizures, Plaintiff could perform regular household chores, including laundry, preparing meals, cleaning gutters, and caring for many dogs. *Id.*  Continuing, Defendant indicates that Plaintiff testified that he has social difficulties and disliked crowds, yet went to cookouts, regularly attended church several times a week, and was able to go grocery shopping. *Id.*  Additionally, Defendant states that the ALJ found Plaintiff's hobbies of reading and doing crossword puzzles inconsistent with his claims that he had problems concentrating. *Id.* at 20-21.

-16-

Next Defendant addresses Plaintiff arguments, stating that: (1) contrary to Plaintiff's assertion, Dr. Rhee did not note that Plaintiff was reluctant to take his anti-depressant because of his concern for side effects until after Plaintiff actually tried it, which occurred approximately three months after Plaintiff was originally given the anti-depressant; and (2) Plaintiff's focus on his experience of adverse side effects when on an increased dosage of one of his anti-seizure medications does not render the ALJ's consideration of Plaintiff's non-compliance faulty. ECF Dkt. #16 at 21.  Finally, Defendant asserts that Plaintiff's argument that his mere participation in daily activities, in spite of his physical and mental impairments did not preclude a finding of disability or indicate an ability to engage in substantial gainful activity applies the incorrect legal standard because the ALJ was tasked with determining what Plaintiff could do in consideration of his activities of daily living.  ECF Dkt. #16 at 22.  Defendant states that the ALJ properly based his credibility findings on substantial evidence in comparing Plaintiff activities of daily living to the debilitating limitations he alleged, and found that there were inconsistencies between the two.  *Id.*

Plaintiff's arguments are without merit.  Plaintiff asserts that the ALJ's emphasis on his non-compliance in taking his medications ignores Plaintiff's previous experience with severe side effects, his lack of reliable insurance coverage, and non-compliance as a possible symptom of his mental impairment.  ECF Dkt. #13 at 14-15.  As for the evidence the Dr. Arredondo increased Plaintiff's Tegretol and Dr. Medel's noted that Plaintiff had five or six seizure episodes, Plaintiff has failed to provide any argument as to how these pieces of evidence suggest that the ALJ improperly assessed Plaintiff's non-compliance when making a credibility assessment.  Regarding Plaintiff's indication that he was reluctant to try an anti-depressant prescribed by Dr. Rhee, Defendant correctly asserts that Dr. Rhee did not note Plaintiff's reluctance until three months after the medication was prescribed.  *Id.* at 21.  Plaintiff does not explain the source of his reluctance to begin taking the anti-depressant medication or why he waited three months to express his concern over taking the medication, instead choosing to simply not take the medication.  Likewise, Plaintiff claims that his "conditions increase[d] the likelihood that [he would] not maintain medication compliance for both his physical and mental impairments."  ECF Dkt. #13 at 15.  Plaintiff cites no medical evidence in support of this assessment or explanation for why his impairments would increase the likelihood that

-17-

he would not comply with his medication regime, and makes no attempt to explain his failure to attend scheduled medical appointments.  Additionally, Plaintiff's claim that he was not taking his medication at the time of the hearing because he had not "been able to see a doctor because he was unsure if he would have coverage" is unconvincing.  *See* ECF Dkt. #13 at 14.  First, this explanation only pertains to Plaintiff's non-compliance at the time of the hearing, and does not explain his non-compliance over the course of his medical treatment.  Second, Plaintiff being "unsure" if his insurance would cover his medications is a problem that Plaintiff could have remedied in a simple manner had he wished to do so by contacting the physician and/or his insurance company.  If Plaintiff had wished to remain on his medication regime he could have taken steps to do so, however, it does not appear that he took action in an attempt to comply with his recommended treatment.

In support of his claims regarding the ALJ's consideration of his activities of daily living, Plaintiff indicates that the ability to perform simple functions, such driving, grocery shopping, dish washing, and floor sweeping does not necessarily indicate that an individual is capable of engaging in substantial gainful activity.  ECF Dkt. #13 at 15 (citing *Meece v. Barnhart*, 192 F.Appx. 456, 466 (6th Cir. 2006) (internal citation omitted).  Plaintiff is correct that the ability to perform simple functions  does not necessarily indicate that an individual is capable of engaging in substantial gainful activity, however, the ALJ is not precluded from considering these activities and how the activities related to Plaintiff's alleged impairments and limitations.  Here, the ALJ determined that Plaintiff's activities of daily living included simple functions, namely, performing chores such as cleaning, laundry, and preparing meals, but also addressed additional activities of daily living when finding that Plaintiff's activities of daily living belied his allegations of debilitating seizures and deficits in social functioning and concentration.  *See* Tr. at 29.  The additional activities addressed by the ALJ demonstrated that Plaintiff: worked around his house and cared for pets; had friends and socialized with them; attended church; read; and did crossword puzzles.  *See id.*  The ALJ adequately explained how these activities of daily living, taken as a whole, belied Plaintiff's allegations of debilitating seizures, deficits in social functioning, and problems related to

-18-

concentration.   Accordingly, the ALJ provided good reasons for his credibility finding that were supported by substantial evidence.

### C.    Vocational Expert Testimony

Finally, Plaintiff asserts that the ALJ's errors regarding Plaintiff's RFC and credibility contributed to an incomplete hypothetical question that failed to encompass all of Plaintiff's limitations.  ECF Dkt. #13 at 16.  Defendant contends that the ALJ was under no obligation to elicit evidence based on an RFC he did not assess.  ECF Dkt. #16 at 23.  Plaintiff's argument fails because, for the reasons stated above, the ALJ did not commit err when making the RFC and credibility determinations, and, as such, the hypothetical question was not incomplete.

## VI.    CONCLUSION

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.


Date: September 6, 2016                      */s/George J. Limbert*
                                             GEORGE J. LIMBERT
                                             UNITED STATES MAGISTRATE JUDGE

-19-